UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| RONDA A. HUBLEIN, | ) | No. CV-07-3108-CI |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING PLAINTIFF'S |
| v. | ) | MOTION FOR SUMMARY JUDGMENT |
| | ) | AND REMANDING FOR ADDITIONAL |
| MICHAEL J. ASTRUE, Commissioner | ) | PROCEEDINGS |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 13, 15). Attorney D. James Tree represents Ronda Hublein (Plaintiff); Special Assistant United States Attorney David J. Burdett represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment, and remands the case to the Commissioner for additional proceedings pursuant to 42 U.S.C. §405(g).

**JURISDICTION**

On September 12, 2003, Plaintiff protectively filed her application for Social Security Income (SSI) benefits. (Tr. 266.) She alleged disability due to peripheral neuropathy, diabetes, high blood pressure, asthma, and depression, with an alleged onset date

of December 20, 1998. (Tr. 68-69.) Benefits were denied initially and on reconsideration. (Tr. 39.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on July 25, 2007, before ALJ Paul Gaughen. (Tr. 263-89.) Plaintiff, who was represented by counsel, medical expert George Rodkey, M.D., and vocational expert William Weiss testified. (Tr. 264.) The ALJ denied benefits. The Appeals Council denied review. (Tr. 4-6.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

### STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings, and are briefly summarized here. At the time of the hearing, Plaintiff was 47 years old with an eleventh-grade education. (Tr. 505, 509, 528.) She was separated and had two daughters; she and her 13 year old daughter were living with her adult daughter. (Tr. 161.) She had past work experience as a kitchen helper and teacher's aide. (Tr. 69.) In disability reports, she stated she could not work because she could not lift or stand, had trouble with concentration and memory and pain and numbness in her extremities due to diabetes. (Tr. 68-69.) At the hearing, she testified she had lost 80 pounds over the last five to six months. (Tr. 280.) She testified she had a hard time standing or doing anything with her hands for long periods of time, and had no feeling in her fingertips. She could sit for 30 minutes before she needed to move around, she walked to the store about ten minutes from her house and could carry a gallon of milk. She stated she had no trouble reading if there were other distractions. (Tr. 275-76,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS - 2

1  280.)

2                        **ADMINISTRATIVE DECISION**

3       At step one of the sequential evaluation, ALJ Gaughen found

4  Plaintiff had not engaged in substantial gainful activity since June

5  5, 2005.  (Tr. 21.)  After a detailed discussion of the medical

6  record, he found at step two that Plaintiff had the severe

7  impairment of diabetes mellitus and non-severe impairments of "mild

8  hearing loss, reflux esophagitis, hypertension, depression and eye

9  problems."  (Tr. 24.)  At step three, he determined these

10  impairments alone or in combination did not meet or medically equal

11  one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P,

12  Regulations No. 4 (Listings).  (*Id*.)  The ALJ found Plaintiff's

13  allegations regarding the intensity of her pain and other

14  limitations were not totally credible.  (Tr. 26-27.)  At step four,

15  he determined Plaintiff had a residual functional capacity (RFC) to

16  perform light work "except she can only be on her feet for 2 hours

17  out of an 8 hour day and sit for six hours out of an 8 hour day.

18  She should avoid dangerous work conditions or temperature extremes.

19  She can occasionally make postural adjustment."  (Tr. 25.)  The ALJ

20  concluded Plaintiff was unable to perform past relevant work.  (Tr.

21  28.)  Proceeding to step five, the ALJ considered vocational expert

22  testimony and found Plaintiff could perform other jobs that exist in

23  significant numbers in the national economy and, therefore, was not

24  under a "disability" as defined by the Social Security Act.  (Tr.

25  29.)

26                          **STANDARD OF REVIEW**

27       In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the

28

court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

## SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS - 4

1  In evaluating whether a claimant suffers from a
2  disability, an ALJ must apply a five-step sequential
   inquiry addressing both components of the definition,
3  until a question is answered affirmatively or negatively
   in such a way that an ultimate determination can be made.
4  20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  "The
   claimant bears the burden of proving that [s]he is
5  disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir.
   1999).  This requires the presentation of "complete and
6  detailed objective medical reports of h[is] condition from
   licensed medical professionals." *Id*. (citing 20 C.F.R. §§
7  404.1512(a)-(b), 404.1513(d)).

8      It is the role of the trier of fact, not this court, to resolve

9  conflicts in evidence. *Richardson,* 402 U.S. at 400.  If evidence

10 supports more than one rational interpretation, the court may not

11 substitute its judgment for that of the Commissioner. *Tackett*, 180

12 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

13 Nevertheless, a decision supported by substantial evidence will

14 still be set aside if the proper legal standards were not applied in

15 weighing the evidence and making the decision. *Brawner v. Secretary*

16 *of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If

17 there is substantial evidence to support the administrative

18 findings, or if there is conflicting evidence that will support a

19 finding of either disability or non-disability, the finding of the

20 Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-

21 1230 (9th Cir. 1987).

22                          **ISSUES**

23     The question is whether the ALJ's decision is supported by

24 substantial evidence and free of legal error.  Plaintiff argues the

25 ALJ erred when he: (1) improperly rejected treating physicians'

26 opinions; (2) failed to consider the combined effects of her

27 impairments; (3) failed to consider evidence from non-medical

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR ADDITIONAL PROCEEDINGS - 5

sources; and (4) did not meet the Commissioner's burden at step five.  (Ct. Rec. 14 at 11.)

**DISCUSSION**

**A.    Consideration of Obesity**

The ALJ must consider the combined effect of a claimant's impairments, severe and non-severe, on the ability to function, without regard to whether each alone is sufficiently severe.  *See* 42 U.S.C. § 423(d)(2)(B)(Supp. III 1991).  Plaintiff argues the ALJ failed to consider properly the effects of obesity at steps two and four.[1]  (Ct. Rec. 14 at 16-17.)  Under prior Regulations, a woman of Plaintiff's height (65 inches) was considered obese for purposes of disability if she weighed 266 pounds or more.  20 C.F.R. Pt. 404 Subpt. P, App.1, Section 9.00 Table II (April 1999).  The Social Security Administration removed obesity from the Listings in August 1999.  However, *Social Security Ruling* (*SSR*) 00-3p and *SSR* 02-1p still permit an ALJ to equate obesity--alone or with other impairments--with a listed impairment, *e.g.*, a musculoskeletal impairment, when a claimant is unable to ambulate effectively. *SSR* 02-1p; *SSR* 00-3p; *see* 20 C.F.R. § 404, Subpt. P, App. 1, 1.00B(2)(b) (defining function level for musculoskeletal impairments).

Weight gain alone does not evidence impaired functionality; that is why *SSR* 00-3p and *SSR* 02-1p direct an ALJ to evaluate the

---

[1]  The ALJ specifically found Plaintiff's non-severe impairments, including situational depression, were controlled by medication or were not being treated, and were not causing significant or continuing problems.  (Tr. 24.)  Plaintiff does not challenge this finding.

effect of a claimant's obesity with reference to a listed impairment and not to make assumptions about the severity or functional effects of obesity. SSR 02-1p at 1 & 6; SSR 00-3p at 6.   The listing for musculoskeletal impairment specifically notes the potential impact of obesity on that condition. 20 C.F.R. § 404 App. 1 at 1.00(Q).

On June 17, 2005, treating physician John Anderson, M.D., at the Cle Elum Family Medicine Clinic (CEFMC), indicated Plaintiff was 65 inches and weighed 214 pounds which he considered "significantly overweight."  As noted by the ALJ, Dr. Anderson observed Plaintiff "moves about fairly easily," appeared to be doing fairly well and commented her "sense of disability is out of proportion to any objective findings." (Tr.  21, 180.)

Although it was reported by her physicians that she was overweight and needed to lose weight to mitigate symptoms of her diabetes mellitus, there is no evidence from treatment or examining physicians that obesity is a cause of exertional limitations.   For example, in July 2005, examining physician Marie Ho, M.D., observed Plaintiff was able take off her shoes, get on and off the examining table without difficulty, tandem walk, hop, squat for a short time, bend, reach, grip and release.  She had a slight decrease in hand grip in her right hand, but normal muscle bulk and tone in lower and upper extremities. (Tr. 22, 156-57.)  Dr. Ho opined Plaintiff could sit six hours a day, stand six hours with normal breaks "due to peripheral neuropathy of the lower legs." She also opined Plaintiff was limited to occasional kneeling and crouching.   Obesity was not indicated as a diagnosis or cause of functional limitations.

Treatment notes from Dr. Owens indicate Plaintiff fell down the

stairs in July 2006.  She reported the fall was caused by her diabetic neuropathy.  (Tr. 241.)  Dr. Owens noted Plaintiff refused to monitor her blood sugar; peripheral neuropathy and frequent falls were considered related to the poorly controlled diabetes.  Dr. Owens prescribed a walker to prevent future falls.  (*Id.*)  In August 2006, Plaintiff reported losing 19 pounds, was more compliant with medication and diet and indicated she was "doing a lot of heavy work" which caused an arthritis flare up.  (Tr. 242.)  Plaintiff stated she had not received the prescribed walker, indicating she was able to move and do "heavy work" without the device.  (Tr. 23, 242.)  Plaintiff did not report any falls while she was without the walker.  (Tr. 242.)  At that time, Dr. Owens noted "obesity with good weight loss," and poorly controlled diabetes.  (Tr. 242.) There are no treatment notes from Dr. Owens after this date.  In July 2007, Dr. Owens completed a form report listing Plaintiff's diagnoses as "severe peripheral neuropathy, type 2 diabetes, osteoarthritis."  She indicated Plaintiff would miss four to five days a month due to medical impairments, but did not explain the basis for this opinion.  (Tr. 261.)

Contrary to Plaintiff's argument, the evidence does not support a finding that Plaintiff's weight caused functional impairments. Her weight did not equal the prior Listing requirements, and she lost considerable weight during the relevant period.  Further, the ALJ properly considered those limitations caused by Plaintiff's diabetes-related peripheral neuropathy, combined with other impairments when he determined she was capable of a limited level of light work.  Specifically, he restricted her ability to stand in an

eight-hour day to two hours, rather than six, as opined by Dr. Ho, (Tr. 158), and included the need for postural adjustments to accommodate problems with crouching and kneeling. (Tr. 284.) Dr. Ho, Dr. Anderson, and Dr. Owens specifically attributed Plaintiff's exertional and non-exertional limitations to her poorly controlled diabetes and resultant peripheral neuropathy.[2] The ALJ did not err in his consideration of severe and non-severe impairments.

**B.  Treating Physician Medical Opinions**

Plaintiff claims the ALJ improperly rejected the opinions of her treating physicians, Dr. Anderson and Dr. Owens. (Ct. Rec. 14 at 13.) In a disability proceeding, it is the role of the ALJ to resolve conflicts in medical evidence. A treating physician's

---

[2] Plaintiff asserts the medical expert testimony supports her argument that obesity should have been considered with other impairments. Medical expert Dr. Rodkey appeared at the hearing telephonically; he was not present when Plaintiff testified she had lost 80 pounds in five to six months. (Tr. 265, 280.) He summarized the record, interpreted the medical records and opined Plaintiff was capable of light work with standing and walking reduced to two hours in an eight-hour day. (Tr. 273.) At the end of his testimony, Dr. Rodkey commented that obesity was one of Plaintiff's biggest problems. (*Id.*) In the context of uncontrolled diabetes, and resultant neuropathy, Dr. Rodkey's conclusion is accurate, but this comment alone, without explanation, does not establish obesity as an impairment for disability purposes, and it is insufficient to support a finding that Plaintiff's weight caused the identified functional limitations.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS - 9

opinion is given special weight because of his familiarity with the claimant and her physical condition. *See Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989). If the treating physician's opinion is not contradicted, it can be rejected only with "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair*, 885 F.2d at 605. Furthermore, a treating physician's opinion "on the ultimate issue of disability" must itself be credited if uncontroverted and supported by medically accepted diagnostic techniques unless it is rejected with "clear and convincing" reasons. *Holohan v. Massanari*, 246 F.3d 1195, 1202-03 (9th Cir. 2001).

To meet this burden, the ALJ can set out a detailed and thorough summary of the facts and conflicting clinical evidence, state his interpretation of the evidence, and make findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is not required to accept the opinion of a treating or examining physician if that opinion is brief, conclusory and inadequately supported by clinical findings. *Id.* Further, a plaintiff's credibility is an appropriate factor to consider when evaluating medical evidence. *See Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005). Where a claimant alleges a disabling pain, an ALJ "may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir.

1991); *Cotton v. Bowen,* 799 F.2d 1403 (9th Cir. 1986); 20 C.F.R. §§
404.1529(c)(2), 416.929(c)(2).    Nonetheless, where the claimant
introduces medical evidence showing that she has an ailment
reasonably expected to produce pain, an ALJ is not required to
believe the allegations of severity; many medical conditions produce
pain not severe enough to preclude gainful employment. *Fair*, 885
F.2d at 603.

Here, Plaintiff submitted treatment records and reports from
CEFMC, dated September 2003 to June 2006. (Tr. 174-86, 238-49.)  In
addition to treatment notes, Dr. Anderson and Dr. Owens completed
form reports, opining Plaintiff was unable to work.  (Tr. 228-29;
260-64.)   In June 2005, Dr. Anderson stated he did not think
Plaintiff was permanently disabled; in December 2005, he stated she
could not tolerate prolonged standing or walking or do fine
manipulation.  He concluded she was "disabled for any types of work
for which she is trained." (Tr. 174-75.)   As discussed above, in
July 2007, Dr. Owens (who became Plaintiff's treating physician
after Dr. Anderson), stated Plaintiff was at risk for falling and
would miss an average of four or more days a month due to her
neuropathy condition.  (Tr. 260-61.)  Plaintiff argues these
opinions should have been given controlling weight, resulting in a
finding of disability.

The ALJ thoroughly summarized the medical records from CEFMC,
including Dr. Anderson's letter and Dr. Owens' form.  (Tr. 21-24.)
In assigning little weight to the form opinions relied upon by
Plaintiff, the ALJ reasoned Dr. Owens' conclusions were based on
Plaintiff's unreliable self-report, were not supported by reference
to clinical notes or objective testing, and were not consistent with

treatment notes.  He found Dr. Anderson's brief opinions were not supported by his own treatment records, which revealed concerns by Dr. Anderson that Plaintiff had a "disability mindset" and her complaints were not consistent with objective findings.  *(Id.;* Tr. 174.)  The ALJ specifically referenced Dr. Anderson's December 2005 opinion letter which was refuted by an opinion letter written in June 2005, stating Plaintiff would be employable in six months  (Tr. 27, 174-75.)  Finally, he reasoned both treating physician opinions were inconsistent with Dr. Ho's comprehensive evaluation and Dr. Rodkey's testimony. (Tr. 27.)   These are specific and legitimate reasons which are supported by the record. *Morgan*, 169 F.3d at 600-02.   Further, the ALJ is not required to accept the opinion of a treating or examining physician if that opinion is brief, conclusory and inadequately supported by clinical findings.   *Thomas*, 278 F.3d at 957 *(citing Magallanes*, 881 F.2d at 751).  The ALJ did not err in rejecting the conclusory opinions of Dr. Anderson and Dr. Owens that Plaintiff was unable to perform any type of work.

**C.    Lay Testimony**

Plaintiff argues the ALJ erred because he did not consider evidence from Plaintiff's social worker and vocational consultant. (Ct. Rec. 14 at 18.) Lay witness testimony as to a claimant's symptoms or how an impairment affects her ability to work is competent evidence and must be considered by the ALJ.   If lay testimony is rejected, the ALJ must give reasons that are germane to each witness. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). However, evidence from non-medical sources can never establish disability absent corroborating competent medical evidence. *Id.* Social worker Tish Jongeward from the Department of Social and

Health Services submitted a letter stating Plaintiff's mobility has decreased and "she appears in pain." Her observations are consistent with evidence in the record, *e.g.*, she is on multiple medications, she has decreased mobility, she has situational depression, her peripheral neuropathy is due to diabetes. (Tr. 118.) Her opinion that Plaintiff is "disabled" because of these symptoms, however, does not establish disability under the Social Security Act. Vocational consultant William Wright submitted a general statement, dated October 23, 1998, regarding general sick-leave policies for "typical employers." (Tr. 14.) Mr. Wright did not express opinions based on Plaintiff's record or his observations of Plaintiff's symptoms. The ALJ was not obliged by the Regulations to consider Mr. Wright's non-probative statement.

**D.   Step Five: Vocational Expert Testimony**

At step five, the burden shifts to the Commissioner to show there is a significant number of jobs in the national economy that the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). The ALJ may use the testimony of a vocational expert to identify appropriate jobs. *SSR* 00-4p. The hypothetical posed to the vocational expert must accurately reflect a claimant's limitations determined credible and supported by the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2001); *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988); *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991).

Here, the hypothetical and the final RFC determination do not fully reflect non-exertional limitations supported by the record, specifically the effects of diabetes-related peripheral neuropathy on Plaintiff's extremities. (*Id.*) Plaintiff testified, and the ALJ

found, that her medical condition caused pain and numbness in her feet, hands and finger tips. Plaintiff testified when she was working with her hands, she would have to stop due to the symptoms. (Tr. 27, 276.)  Although the ALJ specified Plaintiff could sit for six hours in an eight-hour day if given an alternating sit-stand option, he included only the following non-exertional restrictions: "Shouldn't work on dangerous work conditions, or where there is temperature extremes either going hot or cold.  She can occasionally make postural adjustments." (Tr. 285.)   Plaintiff's complaints of pain and numbness in her hands caused by neuropathy are supported by medical evidence.  (Tr. 222, 238.)  In discounting her testimony, the ALJ found her ability to work part-time at Meals on Wheels in 2004 (Tr. 282), was inconsistent with her claimed limitations from numbness in her fingertips.  (Tr. 27.)   This reason is not sufficient to totally reject symptoms from established neuropathy. Further, the degree of pain and numbness in her fingers and other extremities, and the symptoms' effect on Plaintiff's ability for sustained work, were not addressed in the hypothetical, or the RFC. (Tr. 25, 284-85.)  Because total rejection of these limitations is not supported  reasonably by the medical diagnosis and treatment in the record, and because the ALJ made no findings relative to pain and numbness supported by the record, the hypothetical to the VE was incomplete.  Where the hypothetical posed to a VE is not complete, the VE's testimony is not substantial evidence. *Osenbrock*, 240 F.3d at 1162-63.

In response to the ALJ's hypothetical, the VE found there were light level and sedentary level jobs in Washington State that Plaintiff could perform: bench assembler (light), semi-conductor

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
REMANDING FOR ADDITIONAL PROCEEDINGS - 14

bonder (sedentary), and call-out operator (sedentary). (Tr. 285-86.) The VE also testified that with a limitation in finger manipulation (as propounded by Plaintiff's representative), the only job the hypothetical individual could perform was the sedentary job of call-out operator, *Dictionary of Occupational Titles* (*DICOT*) number 237.367-014. (Tr. 285.) Plaintiff's counsel did not propound numbness or pain in the hands and fingers. Further, on independent review it is noted the *DICOT* definition describes the call-out operator job as:

> Compiles credit information, such as status of credit accounts, personal references, and bank accounts to fulfil subscribers' requests, using telephone. Copies information onto form to update information for credit record on file or for computer input. Telephones subscriber to relay requested information or submits data obtained for typewritten report to subscriber.

United States Department of Labor, *DICOT, (*4th Ed., Rev. 1991). The job requires "significant" compiling, a medium degree of motor coordination, a medium degree of finger dexterity, and occasional fingering (up to 1/3 of the time). It is also noted that the *DICOT* information is dated 1991, and the VE did not provide information regarding how the one job identified (call-out operator) was actually performed, and how much computer work involving repetitive hand work is currently involved. As to the opinions expressed by the ALJ's expert, it is the Government's responsibility to ensure the credibility, completeness, and quality of the resulting report. *Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th Cir. 1984). Because the hypothetical question did not include limitations in Plaintiff's fingers caused by neuropathy, and the VE testimony is not conclusive that Plaintiff could perform the only job identified at the hearing, the Commissioner did not meet his burden at step five. Remand is

necessary for additional proceedings, including a new RFC determination and vocational expert testimony. On remand, Plaintiff may present additional evidence. Accordingly,

**IT IS ORDERED:**

1.   Plaintiff's Motion for Summary Judgment **(Ct. Rec. 13)** is **GRANTED.** The matter is remanded to the Commissioner for additional proceedings in accordance with the decision above and sentence four of 42 U.S.C. § 405(g);

2.   Defendant's Motion for Summary Judgment **(Ct. Rec. 15)** is **DENIED;**

3.   Application for attorney's fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff, and the file shall be **CLOSED.**

DATED December 30, 2008.


                 S/ CYNTHIA IMBROGNO
          UNITED STATES MAGISTRATE JUDGE